IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTHONY D. RUSSELL, ) | |
| AIS 112117, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-636-WKW-CWB |
| ) | |
| MS. BUTLER, WARDEN, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   Introduction**

Anthony Russell, Jr. is an inmate incarcerated at the Alex City Work Release Center in Alex City, Alabama.[1] (*See* Doc. 48). Russell has filed this action pursuant to 42 U.S.C. § 1983 on the allegation that his federally protected rights were violated through certain disciplinary proceedings. (Doc. 1 at pp. 2-4). Russell names as defendants Warden Reosha Butler and Sergeant Kelvin Teal, who were employed at the Elba Work Release Center at all relevant times. (*Id.* at pp. 1-2). Also named as a defendant is Joe Grant, who at all relevant times was the canteen manager at the facility. (*Id.*). All of the defendants have been sued in both their official and individual capacities, and Russell has requested a trial by jury. (*Id.* at p. 1).

Warden Butler and Sgt. Teal filed an Answer and Special Report, accompanied by various evidentiary materials (*e.g.*, affidavits and prison documents). (Doc. 28). The court in turn directed Russell to file a written response supported by affidavits or other statements made under penalty

---

[1] When he initiated this lawsuit, Russell was incarcerated at the Elba Work Release Center in Elba, Alabama. (*See* Doc. 1).

1

of perjury. (Docs. 29 & 51). Russell thereafter filed an affidavit and other responsive materials. (Docs. 31, 32 & 34). Grant has only filed a *pro se* Answer.[2] (Doc. 33).

The parties previously were given notice that "the court may at any time [after expiration of the time for Russell to file a response] and without further notice to the parties (1) treat the [special] report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, and (2) after considering any response …, rule on the dispositive motion in accordance with the law." (Doc. 29 at p. 3; *see also* Doc. 51). Pursuant to that disclosure, the undersigned now recommends that summary judgment be granted in favor of Warden Butler and Sgt. Teal on all claims asserted against them. The undersigned further recommends that the remaining claims as alleged against Grant be dismissed.

**II.    Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record

---

[2] The record reflects that counsel for Warden Butler and Sgt. Teal initially entered an appearance for Grant as well but subsequently sought to withdraw after determining that Grant was an independent contractor and not a state official or employee. (*See* Doc. 26). The request to withdraw was granted. (Doc. 27).

showing a genuine dispute of material fact. *Id*. at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

In determining whether a genuine dispute of material fact exists, the court must view all the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment also should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. Relevant Facts[3]

Russell asserts in conclusory fashion that the defendants violated his Fifth, Eighth, and Fourteenth Amendment rights by denying him fundamental fairness during disciplinary

---

[3] Where facts are in dispute, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992). As such, the "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400, *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (citation omitted) (explaining that "what we state as 'facts' ... for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts").

proceedings. (Doc. 1 at pp. 3-4). Russell also makes a vague allegation that Warden Butler and Grant "con[c]octed a plan to implement a distortion of the truth." (*Id.* at p. 3). The crux of Russell's claims appears to stem from the defendants' alleged conduct in not adhering to agency rules and regulations regarding his disciplinary proceedings. (*Id.* at p. 4). Specifically, Russell asserts that he was not allowed to prepare written questions for his disciplinary hearing because he needed his eyeglasses—which staff at the Elba Work Release Center would not return.[4] (*Id.*). Russell claims that Sgt. Teal knew where his glasses were but would not assist him in retrieving them, refused his request to postpone the hearing, and denied his request to speak to the investigative unit of the Alabama Department of Corrections and the Alabama Bureau of Investigation. (*Id.*). As a result, Russell maintains that he did not receive a fair and impartial disciplinary hearing. (*Id.*).

The evidence presented by Warden Butler and Sgt. Teal includes an institutional incident report that reflects Russell received a disciplinary on May 12, 2019 for his violation of Rule 505—intentionally creating a security, safety, or health hazard. (Doc. 28-6 at p. 1). According to the disciplinary, Russell was in line at the canteen and spoke loudly to Grant about early closures. (*Id.*). Grant directed Russell to leave the canteen line and then reported the incident to correctional staff who reprimanded Russell and issued a disciplinary. (*Id.*).

Russell was served with a disciplinary on May 16, 2019 for his violation of Rule 505. (Doc. 28-4 at p. 1). The circumstances listed in the disciplinary indicate that Russell spoke to Grant in a loud and hostile tone, to which Russell entered a plea of not guilty. (*Id.*). A disciplinary

---

[4] Russell contends that his eyeglasses were in Warden Butler's office (Doc. 1 at p. 3), but she denies the allegation (Doc. 28-2 at p. 2). Russell acknowledges that he is not blind and merely states without further elaboration that he has difficulty seeing "certain things." (Doc. 34 at p. 4). Russell admits receiving his glasses four days after transfer to another institution. (Doc. 1 at p. 3).

4

hearing was held on May 18, 2019, and Russell was given the opportunity to present evidence and testify on his own behalf. (*Id.*). Russell also requested the presence of an inmate witness, who refused to appear. (*Id.* at p. 1; Doc. 28-5 at p. 1). As the hearing officer, Sgt. Teal found Russell guilty of violating Rule 505. (Doc. 28-4 at p. 2). The sanctions imposed against Russell included extra duty for 30 days, loss of privileges, and recommendation for a custody review. (*Id.*).

IV. Discussion[5]

As grounds for summary judgment, Warden Butler and Sgt. Teal argue that Russell's § 1983 claims are barred by the Eleventh Amendment to the extent asserted against them in their official capacities and are barred by qualified immunity to the extent asserted against them in their individual capacities. (Doc. 28 at p. 3).

A. Sovereign Immunity

Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). A state official thus may not be sued in his or her official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala.*,

---

[5] In accordance with applicable federal law, the court limits its discussion to the claims identified in the Complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that "[a] plaintiff may not amend his complaint through argument in a brief opposing summary judgment"); *see also Ganstine v. Sec'y, Fla. Dep't. of Corr.*, 502 F. App'x 905, 909-10 (11th Cir. 2012) (holding that a plaintiff may not amend his complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court did not err in refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint with respect to such theory).

916 F.2d 1521, 1525 (11th Cir. 1990)); *see also* Ala. Const. Art. I, § 14.  Accordingly, to the extent Warden Butler and Sgt. Teal have been sued for monetary damages in their official capacities, they are entitled to sovereign immunity under the Eleventh Amendment. *See Selensky v. Alabama*, 619 F. App'x 846, 848-49 (11th Cir. 2015); *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B. Qualified Immunity

As to Russell's claims against Warden Butler and Sgt. Teal in their individual capacities, qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if the underlying conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citation omitted).

To receive qualified immunity, a defendant first must prove that he or she was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The record here establishes beyond any dispute that Warden Butler and Sgt. Teal were both acting within the course and scope of their discretionary authority.  The burden therefore shifts to Russell to present evidence that Warden Butler and Sgt. Teal are not entitled to qualified immunity. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To meet such burden, Russell must show two things: (1) that the defendants committed a constitutional violation and (2) that the constitutional right the defendants violated was "clearly established." *Id.*; *see also Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. ... In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). The court may analyze the elements "in whatever order is deemed most appropriate for the case," and a finding of qualified immunity is appropriate if sufficient evidence has not been presented as to any one of the elements. *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241-42).

### i. The Due Process Claim

Russell asserts that the defendants' actions violated his Fourteenth Amendment right to due process.[6] To succeed on a due process theory, Russell must demonstrate the existence of a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Eleventh Circuit has made clear that a prisoner is deprived of a due process liberty interest in only two instances:

> The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes

---

[6] Although Russell also invokes the Fifth and Eight Amendments (Doc. 1 at p. 3), he alleges no facts to support a claim under either. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "[t]hreadbare recitals of ... a cause of action, supported by mere conclusory statements," fail to state a facially plausible claim).

7

> atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) and *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  "In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

In this case, Russell was subject to a 30-day loss of canteen, phone, and visiting privileges. (Doc. 28-4 at p. 2).  Such deprivations do not implicate a Constitutional or state-created liberty interest, as they do not exceed Russell's sentence or "impose atypical and significant hardship on [Russell] in relation to the ordinary incidents of prison life."  *Kirby*, 195 F.3d at 1291 (citing *Sandin*, 515 U.S. at 486).  Moreover, the Constitution does not provide an inmate the right to telephone, canteen, or visitation privileges.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989) (explaining that an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134 (2003) (upholding a two-year restriction on visitation privileges and noting that prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens); *Fuller v. Gates*, 656 F. App'x. 944, 946 (11th Cir. 2016) (holding that extra duty and loss of telephone and visitation privileges for 45 days "did not impose an 'atypical and significant hardship' on the prisoner"); *Moulds v. Bullard*, 452 F. App'x. 851, 854-55 (11th Cir. 2011) (holding that temporary loss of privileges and disciplinary confinement did not constitute the deprivation of a constitutionally protected liberty interest that would entitle the plaintiff to procedural due process).  Nor is there is any state-created liberty interest in telephone, canteen, or visitation privileges in Alabama.  *See Dumas v. State*, 675 So.2d 87, 88-89 (Ala. Crim. App. 1995).

The record reflects that Russell also received two hours of extra duty for a period of 30 days. (Doc. 28-4 at p. 2). That sanction likewise fails to implicate a Constitutional or state-created liberty interest. *Fuller*, 656 F. App'x. at 946; *Spinks v. Bailey*, Case No. 5:15-CV-1580, 2016 WL 4578339, at *4 (N.D. Ala. June 24, 2016), *report and recommendation adopted*, No. 5:15-CV-158-MHH, 2016 WL 4541019 (N. D. Ala. August 31, 2016) ("[T]he Supreme Court and Eleventh Circuit have never found liberty interests arising from the due process clause in connection with the temporary institution of extra duty[.]"); *Zamudio v. State*, 615 So.2d 156, 157 (Ala. Crim. App. 1993) ("Store and telephone privileges are not liberty interests, nor does a prisoner have a right not to have extra work duty imposed.").

The record additionally reflects that Russell was recommended for a custody review. (Doc. 28-4 at p. 2). The recommendation for a custody review after being found guilty of a rule violation does not mark a "dramatic departure from the basic conditions" of a sentence. *Sandin*, 515 U.S. at 485. As an inmate confined in the Alabama prison system, Russell has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Because Russell has no constitutionally protected interest in the level of his custody classification, correctional officials may assign him to any classification level without implicating the protections of due process. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (noting that the Constitution itself confers no right upon an inmate to any particular custody or security classification); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding that there is no liberty interest in a transfer from a low to maximum security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose");

*Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (per curiam) (holding there is "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison").

Russell finally alleges that Sgt. Teal failed to comply with administrative regulations governing inmate disciplinary proceedings. (Doc. 1 at p. 4). This allegation does not support a claim, however, because infringements of agency rules, regulations, or procedures do not standing alone amount to a constitutional violation. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) (recognizing that allegations of a violation of statutory or administrative provisions did not provide the basis for a claim of violation of a constitutional right); *United States v. Caceres*, 440 U.S. 741, 751-752 (1979) (mere violations of agency regulations do not raise constitutional questions); *Hilderbrandt v. Butts*, 550 F. App'x. 697, 700 (11th Cir. 2013) (holding that "[f]ederal due process does not require that state prison officials strictly comply with administrative regulations governing disciplinary hearings in the prison setting"); *Lewis v. Sec'y of Pub. Safety and Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) (holding that prison regulations do not alone create federally protected rights).

Because Russell's allegations against Warden Butler and Sgt. Teal fail to implicate any constitutional violations, the claims asserted against them in their individual capacities are barred by qualified immunity.[7]

---

[7] Although Russell argues that Grant's status as an independent contractor rather than a state actor demonstrates the invalidity of the subject disciplinary because Grant was listed as the arresting officer yet agency regulations indicate that only correctional officials and employees are authorized to arrest or charge an inmate with a disciplinary infraction (Doc. 31-2 at p. 1; Doc. 31 at p. 4; Doc. 31-1 at pp. 2–3; Doc. 31-2 at p. 1), Russell's argument does not change the outcome of his §1983 claim given the lack of any demonstrated constitutional violation.

   **ii. The Conspiracy Claim**

To the extent Russell's claim that Warden Butler and Grant "con[c]octed a plan to implement a distortion of the truth" could be construed as an allegation that they conspired to violate his rights regarding the challenged disciplinary (Doc. 1 at p. 3), he is entitled to no relief. To demonstrate a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (internal quotations and citation omitted). A viable conspiracy claim thus requires a plaintiff to "show an underlying actual denial of [his] constitutional rights." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998), *rev'd on other grounds by Randall v. Scott*, 610 F.3d 707, 709 (11th Cir. 2010). For the reasons previously addressed, Russell has failed to show any constitutional violation, and summary judgment is due to be granted in favor of Warden Buter on the claim for conspiracy—whether on the basis of qualified immunity or otherwise.

  **C. Claims against Grant**

Upon entry of summary judgment in favor of Warden Buter and Sgt. Teal on all claims asserted against them, the action would be left solely with claims asserted against Grant. Even though Grant has not filed any type of dispositive motion, Russell's *in forma pauperis* status authorizes the court to enter a dismissal if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)(1).

An essential element of a claim brought pursuant to 42 U.S.C. § 1983 is that the alleged constitutional deprivation have been committed by a person acting under color of state law. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *see also Willis v.*

*Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993). It is sufficiently clear from the record that Grant is a private individual who did not act under color of state law. And for the reasons previously addressed, it equally is clear that Russell was not subjected to any constitutional violation. The undersigned therefore deems Russell's § 1983 and conspiracy claims against Grant to be frivolous and subject to dismissal.[8]

**V.    Conclusion**

The undersigned Magistrate Judge hereby **RECOMMENDS** as follows:

1. that the Answer and Special Report (Doc. 28) filed by Warden Butler and Sgt. Teal be construed as presenting a motion for summary judgment;

2. that summary judgment be granted in favor of Warden Butler and Sgt. Teal on all claims asserted against them;

3. that the remainder of the action be dismissed with prejudice as to Grant; and

4. that final judgment be entered in favor of all of the defendants.

It is **ORDERED** that any objections to this Recommendation must be filed no later than June 6, 2023. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

---

[8] "A claim is frivolous if it is without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). Unlike a dismissal under Rule 12(b)(6), § 1915(e) grants courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id*. (quoting *Neitzke v. Williams*, 490 U.S. 319 (1989). "A determination of frivolity is best left to the district court, and the decision will not be disturbed so long as the district court stays within its range of choice and is not influenced by any mistake of law." *Jibrin v. Abubakar*, 814 F. App'x 480, 484 (11th Cir. 2020) (citing *Bilal*, 251 F.3d at 1349).

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this the 23rd day of May 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**